May I ask, Counsel, is this to be under seal, this argument? Your Honor, the government has not requested that it be under seal. We can't do that without the Department's approval, we do not. We moved this to the last, just in case we needed to do that, but so we'll try to treat the information that we have sensitively and accordingly you too will also, right?   Thank you, Your Honor. Thank you. And I guess we'll first hear from Mr. Carpenter. May it please the Court. We're asking to quash the subpoena in this case because it seeks to reveal the contents of an attorney witness interview and that category of information is properly protected as opinion work product. Enforcing the government's subpoena in this case would be inconsistent with precedent and it would create a chilling effect that deters the thorough investigation and zealous defense of criminal cases. To begin, I want to make clear that we are primarily concerned here with what the government describes as its third question, which asks us to reveal the statements made by the doctor during our interview with him. To the extent that questions one and two are asking about the origins of the documents in questions, we voluntarily answered those questions before this subpoena was ever issued. Let me just get to the heart of the matter. Work product is generally recognized to be the work of an attorney in connection with a witness. The way in which the attorney assesses a witness, the way in which he makes impressions, how he assessed a witness, are all very highly protected. What he uncovers as facts, I think we had a case sometime back where the attorney interviewed somebody and took notes of the interview. Those are factual inquiries and they're protected also. But they're protected subject to a need, as you know, the exception, and the argument in this case is the testimony of the doctor is somehow the attorney's mental impressions rather than the collection of facts. Now if the attorney said, I didn't believe him, or I did believe him, or I think he would make a good witness, those seem to me would be protected. But if the attorney writes down, he said this, he said this, he said this, those are factual and would fall on the other side of the line. That's where I disagree, Judge Niemeyer, and the Supreme Court does as well. We point directly to the case of the Upjohn case in the United States Supreme Court, which dealt with precisely this scenario. Was that a work product or attorney client? Yes. It held that notes and memoranda from an attorney witness interview, in that case it was an opinion work product, because they quote, necessarily reveal the attorney's mental processes in evaluating the communications. In other words, when an attorney goes out. But you agree with the line I drew, if it has mental impressions. I do not agree with that line. Oh well, I will say. I mean, the Supreme Court, you just read it, if it contains the attorney's mental impressions about it, but if you ask a witness, we're not looking at a written statement now, you ask a witness, what did the doctor say to you? That's factual. The point of Upjohn is broader than that. What Upjohn says is that when an attorney conducts this interview with a witness and records what happened in that interview in notes and memoranda, that those are necessarily protected because simply by writing down what the attorney viewed as the most important thing from that interview, or the most important things from that interview, it necessarily reveals the attorney's thought processes automatically. Here, the government's going to ask the questions, it's going to control, and so the government's going to say, did he tell you this, or what did he tell you about this? He's not going to be getting the attorney's judgment about what's important. He's going to get a relationship relating a fact that has been spoken elsewhere. That gets us into a problem with administrability, which I want to get to in a second, but before I go there, I want to point the court to a decision that unfortunately was not cited in the briefs, but that is on point here, and that is the case of Henri Allen. It's 106F3RD582. It's from 1997, and Judge Motz authored the opinion, and in that case . . . What was it again, 106? 106F3RD582, and what I'm looking at in particular is the pen site of page 608. It holds that an attorney's written summary of a witness interview is opinion work product, and we believe that's a straightforward application of the Upjohn decision. You're not quite understanding my question. They're not asking for you to produce an attorney-recorded fact statement. That's right. They are going to ask a question, a factual question of the witness, and they're going to determine . . . My guess is they're going to ask everything that was said. Well, they've identified the three specific questions that they're allowed to ask. I saw those, but they're going to ask what the person said to the attorney. Sure. Judge Neely, let me direct you to the Hickman decision from the Supreme Court. It's the 1947 decision that's kind of the foundation of the work product doctrine, and the part of it that I think is key here is at page 512, and in that case, it draws an equivalence between an attorney's written memoranda that summarizes the document and an attorney's unrecorded memories of that statement. It says these two must be treated the same. Did Upjohn do that, though? Upjohn did not deal with . . . The only thing that was at issue was . . . . . . was the notes and memoranda, but we think the two follow. In Hickman at page 512, it says that oral statements made by witnesses must be treated the same, whether presently in the form of mental impressions or memoranda. In other words, there's an equivalence. If the attorney chooses to write it down, it's protected. If the attorney chooses to keep it in his head, it's protected, and that has to be the case because otherwise, the ruling in Upjohn would be worthless. The question to the attorney is, what did you think was important about the witness? That's one thing, but if the question is, what did the witness say? I think that . . . well, the problem with that is what an attorney remembers from what a witness said in an interview that occurred three and a half years ago is necessarily going to be what the attorney deemed most important. I mean, if we're talking about notes and memoranda . . . That's a problem with every fact witness. I mean, that's a problem with every fact witness. Our system comes to a halt on trying to collect evidence. Well, and this . . . Your point is that the attorney-client relationship is entitled to this special protection . . . Exactly. . . . that other witnesses . . . Exactly, and what Upjohn says and what Hickman before that says is that when the attorney is out doing the attorney's work, investigating potential defenses to the case, that's a protected area, and it's very dangerous to allow the government to peek into that core function of the attorney. So our case, our 1996 decision in the John Doe matter is incorrect? I don't think it's incorrect. This issue wasn't addressed in that case. So if you look at the 1996 decision, it focused . . . the bank in that case focused only on whether the government had made their prima facie showing. There's no discussion in there. There is a straight statement that the information about the date of the bank loan is fact work product. But that statement is not in the midst of an analysis of this line between opinion and fact work product. It doesn't deal with . . . like the Allen . . . I guess Allen came a year later, but it doesn't deal with the line in Upjohn. It doesn't deal with the Hickman analysis, and again, that's because the bank appears to have conceded that the particular information there was fact work product, and so this court had no occasion to delve into that issue. And the other important distinction . . . I'm sorry. I'm having trouble understanding. What is it that you say that the 1996 case isn't against you because . . . Because it did not address the line between fact and opinion work product. That wasn't the issue that was contested . . . Talked about it, though, right? In passing. I mean, if you follow . . . if you think that that is . . . if you treat that as a holding, you're creating a clear circuit split with the Eighth Circuit in the Green case. And so, you know, if the court chooses to go down that road and to create the circuit split, you know, that . . . so be it. But I think you should be aware that the legal issue of opinion versus fact work product wasn't briefed there, as far as I can tell. If you look at the very first paragraph of the opinion, it says the district court found that the government had made a prima facie showing of crime fraud. The bank appeals and contests that ruling. There's no argument about what's opinion versus what's fact. There's no citation . . . Didn't Green hold that an attorney could be required to discuss the origins of the document? And we can see . . . and we concede on that with respect to 1 and 2, that 1 and 2 . . . questions 1 and 2 are fact work product. But question 3 about the statements that were made during the interview goes beyond the origins of the documents. And Green specifically says the attorney can be required to testify solely with respect to the origins of the document. Other recollections of the interview aren't permissible. And so we're asking the court to draw a bright, clear line. If you are asking an attorney to recall a statement made by a witness during an attorney witness interview, then you are asking for opinion work product. If you are asking an attorney to produce a document that was provided by a witness and to verify its origin, then you're asking for fact work product. We think that's a clear rule, and it has the benefit of being much more easily administrable than the government's rule. If you look at what Judge Niemeyer has hypothesized, we have a situation where the government has to lay out question by question what it wants to ask. The magistrate judge has to go through, say, this inbounds, this out-of-bounds, this inbounds, this out-of-bounds. Then the attorney goes and testifies before the grand jury. If the government learns follow-up information from those questions, learns information and wants to ask a follow-up question, then all of a sudden we have to go back to the magistrate judge again and say, well, now we have a follow-up question. Is it inbounds or is it out-of-bounds? And then we have to appeal again.  But your rule would basically exclude attorneys working on cases from ever testifying on facts. We had our case in United National Union Fire Insurance, and there we drew the line as the way I questioned you, which was if the testimony contains the opinion or the impression or a strategy of the litigation, that ends it. You can't get that. But if it reports facts, historical facts, without giving that gloss, and it seems to me a direction could be clearly directed that the attorneys give only historical facts. So to the extent the question would be what facts do you specifically recall that were stated by the doctor or his specific, as the magistrate judge put it, the specific words that were used, the answer is going to be I don't recall, because it was three and a half years ago. That would be okay. That would be fine. But I want to make one other point, if I may, just for the purposes of transparency, which is the statements that were made during these interviews were uninteresting and they were not incriminating for the doctor or anyone else. And we understand the government doesn't need to take our word for that, but we think it's important to be transparent with the court, that we're not fighting this subpoena because we think there's some damaging information out there that we need to shield. We're fighting it on the principle, because we think that what the government's asking to do here, which is to hail our attorney into court and clear case of fraud here. And the question, pardon me? Nothing that we know. I've looked at it so closely. I've tried to play detective, you know, trying to figure out what happened. When I put on my AUSA hat, this is a simple case. The government, all it has to do is decide who it wants to punish for this fraud. If it wants to punish our former client, all it needs to do is go to the client and give him, say, hey, we'll give you a little reduction on your sentence if you tell us what happened here and how this document got ... Well, then they don't need to prosecute. They have choices to make, and they can go to the client and they can get the doctor. They can go to the doctor and get the client. What we're saying is that when you cannot, the search for truth does run into a wall of the attorney work products. See, Mr. Carpenter, even though you don't think, and I take you at your word, I absolutely believe that you're telling us that there is no valuable evidence, but these witnesses, they change on you. They remember something new. Now, that doesn't detract from your argument about attorney-client privilege, but I just don't know that we can ... Oh, I agree. I just, I want to be transparent with the court, and we view this as sort of the canary in the coal mine kind of situation. Nobody really cares in isolation that the canary dies, but when you're in the coal mine and the canary dies, you're concerned because it tells you ... Mary cares. What's that? Mary cares. Well, fair enough. Fair enough. And PETA does. But my point, more broadly, Judge Diaz, is that in the coal mine, the reason you are concerned that the canary has died is because it indicates that there's poison in the air, and it portends that there are more dangerous things to come. And we believe that is the problem here. If our attorneys can be hailed before the grand jury any time they put on a document to reveal not just the origin of the document, but the contents of the investigation that led our attorney to make the decision to put that document into evidence, we think it creates a really serious chilling effect that threatens the Sixth Amendment. And the third thing that they want, what did the provider of the document say upon handing them over, you believe is attorney warped product? So yes. The answer to that would be, because the only way we would know that is ... And I want to be clear about exactly what their third question is. The briefs kind of obscure what the question is. Okay. Is it written out somewhere? It is. Joint appendix, page 421, Judge Motz. Question three. This is from the AUSA at the hearing. Question three. What did the OptumEd personnel tell you? What were their statements to you? Those are open-ended inquiries into all statements made during the interview. They do not limit it specifically ... All factual. They do not limit it to the documents. They do not limit it to ... They do not limit it to statements of fact, any kind of statement that he could make. It may be relevant, the guys talking about the Los Angeles Dodgers. The fact is, it doesn't hurt anything. It's factual. If the guy said, I went to the Dodgers game, I did this, I did this, that's all factual. That doesn't hurt. What you're entitled to protect is the impressions, and you're really coming from the point of view of the defendant who's been convicted, right? Yes. So the government got there. It's not like this document had any ... The fraudulency of this document had no impact on the jury trial. It says ... One of the third questions is, what did the person tell you? Right. What were their statements to you? And so this is a broad ... That's pretty open-ended. It's very open-ended, and that's exactly our point, Judge Motz. That's why we have a problem with what's going on here, because what it ends up doing, practically speaking ... But the open-endedness is not ... That goes to relevance, maybe, but the open-endedness does not go to work product. It's factual. It does, under Upjohn, because, again, Upjohn says, if the attorney walks out of the interview and writes down everything that this person said, doesn't include any impressions, doesn't include I believe or I don't believe ... It's a written document. You're basically ... Your argument transposes from that argument, I think unfairly, to a notion that anything an attorney remembers is work product. That is exactly what our argument does. I know it is, but that's every witness. But we think, like it or not, Hickman says these things are treated the same, whether presently in the form of mental impressions or memoranda. Now, maybe we don't like that Supreme Court rule. It would never happen, and they testify regularly. I don't think so, and I think this is the line that the Eighth Circuit drew. Let me just ask you this. Hickman is before Upjohn, so Hickman must have not had in it an element that Upjohn had, or there wouldn't have been any necessity for the Supreme Court to take Upjohn, right? True. It went a little further, because what Hickman had were written and oral witness statements, and so Hickman says the written statements are subject to disclosure upon the showing of need that Judge Niemeyer mentioned earlier, but the oral statements that the witness gave, whether they're recorded in the attorney's mind or whether they're recorded on paper after the fact, those ... I understand that, but the witness statements as opposed to ... Exactly. So Upjohn went to witness statements, because Hickman was ... Well, both were witness, but Hickman ... Upjohn had some issues about corporate ... Internal investigation. ... subsidiary, internal investigation subsidiary, and that kind of stuff, so there were issues where it wasn't clear, but we think that the principle from Hickman is that they have to be treated equivalently, regardless of whether they write them down, and if you think about the impact that the government ... Barbara, before you sit down, so I think you talked briefly about this administration problem. Are you suggesting that the government gets to ask follow-up questions after they ask that third question? Absolutely not, and if they seek to, we would object to that. Well, I don't think so either, so why is that a problem? We think it's a problem. You seem to think that the magistrate judge would have to get involved in addressing objections and ... Well, our fear is not that they would try to ask them ... Well, who knows what they would try to do in the grand jury in that case, but let's assume, and I give them full credit. We have a lot of confidence in the government here. Well, I do too, but I do believe they would abide initially by the restrictions. The question is, if they then learn something from the answers to questions one through three that they believe justifies a follow-up question, then they have to go back and seek another order, and we have to ... That's their burden. Yeah. I agree, but I think the court should be cognizant of the administrability concerns that the government's ... If they're willing to undertake that burden, there's obviously something going on here, and ... Well, there is not, I will say again, there's not anything going on in this particular case, but I recognize ... There isn't? No. With respect to ... I mean ... It's evidence that's being talked about. Sure. Isn't that your ... That's my point. My point is that if we recount these statements, it will not advance the ball for the government one tiny fraction, but again, they don't have to take us at our word for that, and I recognize that. I have a hard time understanding that. Maybe nobody remembers anything. If that's so, then it doesn't matter. Okay. Thank you, Mr. Carpenter. Let's hear from, I guess, Mr. Myers up next. Good morning. May it please the Court. Even if it were determined that the testimony sought was, in fact, fact-based work product, it would still be protected, and it would not, in fact, be vitiated by the crime-fraud exception, and the controlling case in that matter would be the Chowdhury test, Chowdhury versus Galarizo. Essentially, there's a two-pronged test. The first is, of course, whether or not the client was engaged in, as Your Honor has already referenced, whether your client was engaged in a crime or fraud and sought the advice of counsel to perpetuate that fraud. And second of all, whether or not the information being sought, in this case the testimony, would bear a close relationship to that fraud. As to the first prong, the magistrate's order finds prima facie through, specifically, the government's allegation of perjury by the client testifying about the validity of Exhibit 3. The problem with this is that the affidavits that the doctor's office has used to support the allegation of perjury were clearly contradicted when the attorneys in this case provided the original version of Exhibit 3 with the raised seal. That being said, it's unclear how, in this case, His Honor could have found that the elements of some violation were made. And I believe he was citing In re Grand Jury No. 5. So ---- I didn't quite follow that argument. The seal doesn't resolve anything. I mean, the fact that the seal may broaden the scope of what's going on, but there clearly was a fraud. Well, Your Honor, here's the crux of the matter in that regard. Because the seal exists, okay, and there's no allegation, the government has gone out of their way to say that the attorney and the investigator in this matter from the Federal Defender's Office has been honest and that there's not ---- Well, I don't think there's any question about it. As a matter of fact, it sounds to me like they're trusting the attorneys in this case completely. Agreed. So we get to a question of if the doctor is being truthful in his affidavits ---- Well, that's ---- Why do you assume that? I don't. But if they were, okay, then the investigators or the attorney would have to be lying, which we know isn't the case. If the doctor was, in fact, himself being untruthful, okay, and then the raised seal, the prescription going back to 2012 did, in fact, exist or was otherwise viable, then potentially my client doesn't even commit perjury under that scenario, because his testimony is consistent with everything that's being said. Well, you haven't eliminated all the possibilities, and I've figured out several possibilities, and you didn't touch on them. But quite apart from that, it seems to me that's not something we have to get into. What we have to get into is whether the United States can investigate what is apparently a fraud for various purposes and seek testimony from an attorney who has relevant evidence or is calculated to obtain relevant evidence to their purposes, their law enforcement purposes. And so the question is whether this is an absolute immunity or qualified. If it's a qualified immunity, then you look at one of the exceptions. And I've understood the distinction to be whether there is the introduction of attorney thought processes, opinions, strategies of that kind, which would . . . we protect that. That's part of the attorney's work. But when an attorney has a pure factual matter, just the fact that he's an attorney doesn't necessarily protect it if there's a higher purpose for it. It doesn't infringe on anybody's interest to get the facts. And so that's what I've understood, and that's the way I read the Supreme Court cases, and I think that's the way we've enforced it generally. And so I don't understand how why we would have to get in to figure out logically who's lying and who's not lying or what the possibilities are. There's pretty clear evidence that one of those documents could not have been created the way it was or what it purports to be. The 19 ---- Scalia, I don't want to talk about the substance necessarily. I don't know if it's protected or not, what's open in this case or not, but the ---- Agreed, Your Honor. And I'm not sure which of those contingents Your Honor wants me to address specifically, but I will say specifically that one of the problems, and I think Your Honor was addressing this with Mr. Carpenter, one of the problems is that recollection requires reflection. Yeah, but see, if that were the criterion, you could never have an attorney testify because it would always be his recollection. When you talk about historical facts, it's always recollection. Now, if you ask the attorney what did you think was important or what stands out, that's one thing. But if you ask an attorney what did you see, did the car go through the light, and it's just factual. Now, the fact that he happened to see this or not, every human being's mental processes has that type of impression. What we're looking at is the object that's factual as opposed to the attorney construct, which is an impression, an assessment, an evaluation, a strategy, an opinion. And with all due respect, Your Honor, if the attorney was testifying, for instance, say at a trial, then certainly he's subject to cross-examination as to that information. If Your Honor is suggesting that he would never be able to testify at a grand jury  No, I'm saying that under the standard that Mr. Carpenter proposed, and I guess you're subscribing to, which is that any recollection, that attorney's recollection of past facts is always protected. That's his proposition. Therefore, an attorney can never testify about past facts, pure, clear facts. Your Honor, I think there's probably some times when there's raw factual data, that sort of thing, that can be easily verified and clarified. I think that's probably the case. Well, I think we've gone through the red light, and why don't we get Ms. Wray up here. Thank you, Your Honor. May it please the Court. I would like to begin with this Court's 1996 decision in Enree Grand Jury Proceedings. And I would note that in that case, the grand jury sought testimony from an attorney about what that attorney was told by their client with respect to a bank note. And this Court stated, in the instant case, the government does not seek opinion work product, only fact work product. The grand jury seeks only transaction of the factual events involved. There is no difference between the information that the grand jury sought, no meaningful difference between the information that the grand jury sought in that case, 1996 decision, and in this case. We seek a transaction of factual events about who provided the document, how that document, the fraudulent document, was provided, and what was said during the time that that document was provided. Is that decision, Ms. Wray, entirely consistent with Upjohn? Yes, it is, because Upjohn dealt with the written recordings. We are not asking for notes from the attorney. And in fact, I can represent to this Court that what we want to know is what was said during that conversation about how that document was provided. In other words, we just, the grand jury has a right to investigate the extent to which a crime was committed and who committed it. And right now the grand jury has limited information about that and needs limited other information. And specifically, just the facts about who provided it, the identity of the provider, the means that were used, and what that provider said about it. Yes, the TV investigator says, just the facts, ma'am. Right, right. That's it. Thank you. I'm a wealth of trivia for days. And so, I think that it is fair to say that what we are asking for, what the grand jury seeks, is simply facts. It is not the mental impressions. Now, if we were asking for the entirety of the notes regarding that interview with that particular witness, then it would be a different case, and it would be a closer case, and perhaps it would be controlled by Upjohn and, you know, we've, and Enri Green in the 8th Circuit decision is exactly that case. They asked for the entirety of the notes respecting one witness. That's not what we're asking for. We're asking to ask the lawyer, who provided the document? How was that document provided? And what did that person who provided a fraudulent document say about that document? So it's limited. The grand jury has a right to this information. It needs the information to be able to determine who to charge. It is absolutely not the attorney's, and I'm talking about the attorney whose testimony we speak, it is not their prerogative to direct the government to decide how to conduct the investigation or the grand jury, or to tell the government, you have to provide the defendant in this case with some sort of sentencing concession so that you can find out that information. That's absurd. What we are asking for is for the grand jury to be able to do its job and to be able to seek limited information so that we can determine who is responsible for this offense, because we know that an offense occurred. And we know that because the defendant testified and perjured himself on the stand. And so that... You know it from the face of the document. We know it from the face of the document. The issuance date of that license was after the date that apparently the medical... That number didn't exist at the time it was proposed. Exactly. We have lots of information that the document was fraudulent, and so that's not really... We know that much. Yes, ma'am. I'm sorry to interrupt you, but it's really important to me, and I value your help in these cases. Can we go back to where you started and what you quoted to us from this 1996 case by Judge Moynihan? Yes. Now, I've been trying to reread this case. I had read it before, but I must say I was not tuned into it. It sounds to me like what was at issue was whether there was fraud or not. In other words, whether the fraud exception applied. It didn't sound from this opinion like the fact that this would otherwise be gettable, was otherwise protected, was at issue. There's a description, to be sure. Did you read me something that shows me that is at issue? Well, I'll tell you why it is at issue, Judge Motz, which is that if it's opinion work product, the prime... I know, but lawyers never make the argument. Well, we don't know if they made the argument because we don't have the briefs. That is my second question. Did you go back and look at the briefs? No, I did not, and I don't think Mr. Carpenter has it actually... Can you tell... And then the other question was, can you tell from this opinion if it was at issue? I couldn't, and I thought maybe you had a passage you could share. I cannot tell you from this opinion. Always in these grand jury cases, we're a little hamstrung. Well, I understand, but this opinion isn't under seal. No, it's not, but I'm saying that what is reported in an opinion in any of these grand jury cases is only part of it. No, but I thought that you knew this opinion really well. I do. I thought maybe you had a case that I could look and I could tell it was at issue because I couldn't find that. Right. Well, I guess... Okay, that's all I'm asking. No, no, no. I guess what I'm going to... If I could, I'm going to suggest that it's always at issue because you don't get to the crime-fraud exception unless it's fact-work product. It's always at issue unless some lawyer doesn't bring it up. And the fact that the Fourth Circuit made these statements suggests to me, and there's no language in this opinion suggesting that the persons wanting to quash the subpoena in that case conceded it. Often the court will say, you know, so-and-so concedes. This court does not usually reach a legal issue if the party concedes that that legal issue is not at issue. So I can only offer that, that it did actually make the statement, it did reach the issue, and that issue had to be reached before the court could assess the applicability of the crime-fraud exception. Okay. Thanks. That's the best I can do. Let me ask you about the administration of this process. Mr. Carpenter has sort of suggested a parade of horribles. You get the answer, you're not satisfied, and you keep digging. What do you anticipate is going to happen if we rule in your favor? I would anticipate that the government is going to do what it has said it would do, which is ask three discreet questions. I do not anticipate that there will be... Which are set forth in the J.A. They are, and I think it's 426. I think that's the... But I can also say that that was set forth in the... I think it was 426 to 427. That is set forth in the transcript of the sealed hearing, and that is what the government attorney in that case said he was going to ask. But I would say that... How about there in 421? I have it at 426 to 427, but perhaps I'm... Okay. Three questions. Who gave the fraudulent documents? How did they give them to you? In other words, did they say, go pick them up outside? Did they hand them to you? How did you get them? This is all Mr. Myers. That's right. Okay. Three, what did the people that you're asking the questions to tell you? What were their statements to you? Right. That's the representation. What were their statements to you? Right. What were their statements to you? I can tell you, but I can say that we're talking about the document. We're not talking about a broad statement. To answer your question, Judge Diaz, those three questions would be asked. This is not difficult, particularly when you have the government saying, here are the three questions we want to ask. This is not open-ended, but even if it were, this is what magistrate judges and district judges do all the time. They review in-camera evidence and decide whether or not it's opinion work product or privilege from the attorney-client privileged or that some other privilege applies. If a question comes back, this is what they're there for. There is not any, particularly if what Mr. Carpenter has represented to this court is accurate, which is that they have absolutely no information, then it's not going to be a problem. There's no reason to suggest that it's going to be a problem in the future because the magistrate judges and the district courts are invested and able to make determinations about what kinds of limited information can be sought. That is what they do all the time. The grand jury in this case seeks only limited information. It is at 426 and 27 also. Thank you. I missed it at 421, but I found it at 426. Anyway, I... We have no, actually, they're kind of loosey, I mean, actually, it sets forth more than three questions. I mean, they're stated and restated. There's no single piece of paper that the government put in and said, here they are, one, two, three, four, one, two, three, one statement, one, two. Well, yes, although the briefs, I mean, I think that I don't recall, but it seems like the post-hearing, we may have been even more specific, but it doesn't matter. I will say this, Judge Motz, the point that the government attorney represented to the magistrate judge is, look, we need to make sure that this document is admissible. We need to know the authenticity. That's what we're seeking. We're seeking to understand how the document was provided so that in that later prosecution that we will undertake because of the admission of this fraudulent document, we need to be able to connect those dots. We can't prosecute that case if we can't connect those dots. Well, the third question, obviously, the government feels is going to give it more information than it's getting from the first and second questions. Absolutely. Potentially. Well, if it's not, it wouldn't be necessary. Right. You wouldn't be in front of us, right? Well, I will say this. I didn't understand them to concede the first two until today. Well, you can, you are free to agree on that. No, I am. I'm saying. And go forth. Right. I'm just saying that we would be here today. So maybe you go back to the office and you'll find out that the answers to the first and second are sufficient. Well, we, I don't think we feel like, the grand jury doesn't feel like it has sufficient information on the first two questions. Well, you would say. Right. But you're going to get those answers. That's right. Right. And so it's possible that we won't feel compelled or the grand jury won't feel compelled to ask the third question. But the third question is fair. You might save a canary in the process. Well, perhaps. I think that the more important point, though, is that this court has said that, and it's completely consistent with all of the dangers that we seek to protect with work product privilege, to enable a government to, or the grand jury, to ask a question of an attorney considering the factual events surrounding the representation. Otherwise, then that means that any time an attorney has a verbal conversation that is fact specific, that is somehow immunized and the government can't ever get to that information. We appreciate that. I think, and all kidding aside, getting to Judge Motz's point, as I understand it, is that this is really a very sensitive matter because it involves the integrity of the attorney-client relationship. And if there is a way to avoid getting to that third question, then you all should make every effort to do that. And we will. And you'll let us know if you're satisfied. Well, I'm hoping that this court will issue a decision that enables us to ask all three questions, Your Honor. I understand that. My questions were, is it possible that just the first and second questions satisfy your needs? And I thought you'd said it is possible. I mean, you know, it's hard to know without being able to ask the third question whether it provides information that is in addition to the answers. Because what was said at the time that document was provided may provide more information about who is responsible for the fabrication. I mean, I think that I have to say that we wouldn't have asked for the third question if we didn't think we needed it. So you're asking, is it conceivable that after the first two questions, we could end? No, I wasn't asking that. I'm sorry if you misunderstood me. No, I may have. I apologize. What I was asking was, would those two satisfy your inquiry? And I thought you said they might. And so that made me think, well, okay. They're prepared to answer the first and second, let those go and see if it does satisfy your inquiry. Yeah, I think we need to ask the third question. But I will say that that third question is limited to statements about the provision of the document. We're not asking for all statements during that interview. Well, that's not what it says. Well, I understand that, and I'm representing to the court today, Mr. Carpenter has represented that we're not going to get any information. His is actually, okay, I understood his is a little easier for me to understand. So what is your representation? I'm saying that the question that we wanted to ask about the statements, the third question is, what were the statements that that witness told you related to the provision of this document, the creation of the document, how it got to us? And, you know, we just need to understand how did the document get fabricated, was, you know, and was, we need to understand the extent of the fraud. The grand jury needs to understand that. Well, it is, because that's what we need to know. We're only investigating that particular document. How did that get to the court? So the third question is really, what were the statements told you with respect to creation of the document? And provision of the document. I mean, basically, provision, provision, provision, you know, in other words, I don't, I think we need to understand the statements about that document, what was stated. And I'm sorry if that feels, you know, I guess what I'm saying is we're not asking for what everything that that person said, we're asking for everything that that person said about the document. Okay. All right. And I think that it is fair to say that that is limited to fact, work product, because we are asking for a transaction of factual events. And this court's decision, the 1996 decision, supports our request. And it is limited, and it is for, it is absolutely a serious issue, the work product privilege, and likewise, the grand jury's need to investigate a crime is serious. And the question is, how do we balance those? And I think this court, and consistent with the Supreme Court, has decided that we balance those by enabling the government to ask attorneys about facts. And I'm assuming your honors don't have any questions about, we have three alternative reasons that the district court, assuming it's fact, work product, that its decision to deny the motion to quash should be upheld. I don't feel any need to elaborate on our brief unless your honors have specific questions about those issues. Thank you. All right. Thank you, Ms. Ray. All right. Mr. Carpenter has a little bit of time. Your honors, I think perhaps the most important thing I can start with is to provide a little bit of additional information to make sure everyone's clear with what has been disclosed on questions one and two. And these facts are recounted in our motion at Joint Appendix 336 and in the magistrate court's order at Joint Appendix 465. So when the government approached us with this document, we voluntarily disclosed a digital color photograph of the document showing the Ray seal. We allowed the government to take physical possession of the document. In addition, in emails both on October 2nd and on October 14th of 2014, the head of our office, Ms. Richardson, confirmed directly to the government's investigating lawyer that these documents were received directly from the doctor. I think I actually do think we know those facts. Okay. Okay. I guess I would like you to give me one more try at this 1996 case. Have you looked at the briefs? I have not. And I looked for them and did not find them, and I believe they were before electronic filing. Yes. But they're available. I can find them. For you, perhaps. I don't think they're available for me at this moment. So if it is an issue, it hasn't been decided there. Well, I suppose if the lawyer raised it and the court decided to not recount the lawyer's case, it doesn't really delve into it. But I suspect what you'll find in those briefs is that they focused on crime fraud. It wasn't contested. It looks like. Yeah. And I would point... That's an exception to something. Right. Which had to be... Well, and this is the point... You have to go through that either by concession or by implicit ruling. And so the thing I want to point the court to is the Hemingway decision from 2013, which is at 734 F3rd 323, which I think is on point. If we are correct that this issue was not briefed and contested, the opinion versus fact distinction by the lawyers, what Hemingway says is that where an issue, quote, was not contested in a prior case, the court's statements with respect to that issue, quote, do not dictate the outcome. That's our position. This issue wasn't briefed before the court. It wasn't squarely presented. So the statement that this was fact versus opinion work product does not dictate the outcome in future cases. Okay. And I accept that. That's your argument. What if it was briefed and argued and this is the opinion? Well, so I would... We're in a tougher spot. Your submission would be that this is contrary to Supreme Court law. That would be, exactly. So what do we do in that? Do we follow circuit precedent? I think you know what you do, which is you have to follow the Supreme Court. Well, if the Supreme Court opinion comes between the circuit precedent and the present case, we certainly follow the Supreme Court precedent. I think... Yeah, but I think if the circuit court precedent just... What year was Upjohn? 1981-ish, early 80s. So we would have to construe that this was a construction of Upjohn. I would not concede that. I think if a circuit precedent simply overlooks a governing Supreme Court precedent, it doesn't fully take it into consideration that the Supreme Court precedent still controls... There's probably law on this. There probably is. I want to go... Well, just try again a little bit more on what... So we voluntarily disclosed this information. And I take it that the government's representing that the grand jury didn't accept our email authentication of these documents. And that's fine. If they had wanted an affidavit merely confirming what Ms. Ray says they're asking for today, we could have provided that two, two and a half years ago and never had any trouble. And it's because exactly, Judge Niemeyer, what you recount, the transaction of factual events, we'd be happy to provide a sworn affidavit from the attorney and the investigator saying something along the following lines that recounts those factual events. In October of... How about relating what the doctor told the attorney? So this is what I would propose, we would say. About the document. So what I would propose we say is in October of 2013, we traveled to California to meet with the doctor. Based on a signed consent from our client, we requested the client's medical records. The doctor, in response to that, the doctor provided the attached records. That gives the government, I think, everything they need to know. Why not say that to the grand jury if that's what... We would have said that two years ago if they had asked for an affidavit requesting that. Instead, they went on this phishing expedition. What other statements were made? They wanted to interview us and go through the nitty-gritty of everything that happened in the representation. Or in the interviews. We could have... It sounds to me like you're willing to accommodate. In other words, you're willing to answer the question. Well, we're absolutely, we've been willing, we voluntarily disclosed this information in October of 2013. Perhaps if Ms. Ray and I had handled this case two and a half years ago, we wouldn't be here. Maybe we can't, and if she is willing to withdraw question three, we will happily move this case and move on. No, she wants question three. I can understand... Well, and we can't go there. Because we think that the Eighth Circuit's decision in Green is clearly on point and consistent with Supreme Court precedent, unlike the stray statements in the 1996 case. And what it says, and this is the Green case at 982, testimony regarding an attorney's recollections of conversations with clients, in our case it's a witness, would reveal the attorney's mental impressions and thought processes. In other words, the attorney's recollections are protectable as opinion work product. We think it's a simple, clear... No, but see, do you understand the problem with that statement? When I read that, I don't think that's consistent with Upjohn. I don't think it's consistent with our opinions. I think it flows... They're basically saying that every recollection of an attorney is work product. With respect to statements... Just a minute. Let me just get out. Sure. My question. My question relates to every statement that attorney makes about a historical fact. Historical fact is work product. And that just simply cannot be the case. Judge Neumeyer, the limitation, the way I would limit what you're saying to make it, we believe, consistent with what the Eighth Circuit is saying is, an attorney's recollection of statements made by witnesses or clients is opinion work product. An attorney's recollection of historical facts, we agree, is not. And that's why we concede. Historical fact, what a witness said. No, we disagree with that. Historical fact, we believe, is the transaction of factual events. We went and we interviewed... Okay. Okay. I think we understand. We'll adjourn court, signee die, and come down and greet counsel. This Honorable Court stands adjourned, signee die. God save the United States and this Honorable Court.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Albert Diaz